KNAPP–MONARCH CO., Plaintiff-Appellant,

v.

CASCO PRODUCTS CORP. and E. A. Langenfeld Associates, Ltd., Defendants-Appellees.

No. 14788.

United States Court of Appeals Seventh Circuit.

March 23, 1965.

Norman Lettvin, Chicago, Ill., Seymour Rothstein, George P. McAndrews, Bair, Freeman & Molinare, Chicago, Ill., of counsel, for appellant.

Thomas F. McWilliams, Granger Cook, Jr., Adolph L. Haas, Howard W. Clement, Chicago, Ill., for appellee Casco Products Corporation.

Before CASTLE, KILEY, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This is an action for patent infringement brought by plaintiff Knapp-Monarch Company against defendants Casco Products Corporation and E. A. Langenfeld Associates, Ltd. Casco moved to dismiss the complaint for lack of proper venue, and the district court granted the motion. Langenfeld moved to dismiss the complaint on the ground that it had not infringed. The district court treated Langenfeld's motion as one for summary judgment and dismissed the complaint on the basis of *de minimis*. Plaintiff has appealed from the orders of dismissal. A summary of the facts follows.

Casco is a Connecticut corporation, having its principal place of business in Bridgeport, Connecticut. It manufactured and sold a steam and spray iron which plaintiff alleged infringed United States Letters Patent No. 3,038,269. Casco's only manufacturing plant is in Bridgeport. During the time relevant for our consideration, it had no employees in the State of Illinois. Although it maintained an account in a Chicago bank, it had no office or other facilities in the state.

The Master Electric Service Company of Chicago had a telephone listing as the

"Casco Authorized Service" and was authorized by Casco to make repairs on appliances under the terms of a warranty which accompanied each Casco product. In 1963 Casco initiated an across-the-counter replacement policy. Under this policy the retailer or wholesaler who sold a defective Casco product was authorized by Casco to honor its warranty by taking back the product and giving to the customer a new one at no charge. The retailer or wholesaler was reimbursed by Casco.

For many years Casco rented space at the Housewares Show, a national trade show which is held semiannually in Chicago. During these shows Casco also rented a "hospitality suite" for entertaining prospective customers and for holding general sales meetings. It is conceded that two of the accused devices were sold at the 1963 shows.

Langenfeld was a manufacturer's representative for Casco's products in the Chicago area. A written agreement between the two companies described Langenfeld as an "independent businessman." Langenfeld had its office in the Merchandise Mart in Chicago, paying its own rent and other expenses. These expenditures were not reimbursed by Casco. Although Casco's name was listed on the directory of the Mart to assist customers in contacting Casco's representative, the Casco name was not on the door of the Langenfeld office. As a manufacturer's representative, Langenfeld solicited orders for Casco products for which it received a commission. The orders were forwarded to Casco in Connecticut. The latter made shipments directly to the purchaser and the purchaser made payments directly to Casco. Casco called upon Langenfeld at times to check on delinquent accounts, but Langenfeld did not comply with these requests. Samples of the accused irons were displayed in Langenfeld's offices though they were never demonstrated or used

by Langenfeld. Langenfeld made a gift or an accommodation sale of two of the accused irons to its employees.

On November 12, 1963, one week after filing of the instant action, Casco transferred that portion of its business relating to the accused devices to another company; and by the end of November, 1963, Langenfeld no longer represented Casco.

*Casco's motion to dismiss.*

The Supreme Court in Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), made it certain that venue in patent infringement actions is governed exclusively by section 1400(b) of the Judicial Code, 28 U.S.C. § 1400(b). That section provides that such actions may be brought in the judicial district "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

Casco, being a Connecticut corporation, was not a resident of Illinois. Accordingly, venue in the Northern District of Illinois could not be based on the first alternative requirement of the statute. Casco admitted, however, that it sold two of the accused devices during the 1963 Housewares Show in Chicago. Therefore, the matter of venue depends upon whether the defendant had a regular and established place of business within the district.

Casco had many varied contacts in the State of Illinois. These contacts, simply because of their multiplicity and variety, do not demonstrate that the company had a regular and established place of business within the state, although they might well indicate that it was "doing business" in the Chicago area within the meaning of that term as it is contained in the general venue statute, section 1391(c) of the Judicial Code, 28 U.S.C. § 1391(c).[1] Despite plaintiff's

---

1. Section 1391(c) reads:
 "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

urging, we decline, however, to substitute the "doing business" test in section 1391 (c) for the "regular and established place of business" test in section 1400(b). If we were to treat the two phrases as synonymous, we would ignore the holding in Fourco Glass to the effect that section 1391(c) does not supplement section 1400(b). Moreover, we would be inattentive to what the Court said in a later decision, when referring to section 1400 (b) and Fourco Glass. "The language of this special statute is clear and specific." Schnell v. Peter Eckrich & Sons, Inc., 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961).

■■ The narrow question remains: Did Casco's contacts and activities in Illinois amount to having "a regular and established place of business" within the meaning of section 1400(b)? We start with an analysis of its separate activities and contacts. Initially, we hold that Casco's maintaining a sales representative in Chicago does not meet the statutory test. In W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U.S. 723, 35 S.Ct. 458, 59 L.Ed. 808 (1915), a Missouri corporation employed a sales representative in New York City. He solicited orders which were completed at the home office. The company paid him a salary, commission on sales, and traveling expenses. It also paid rent on the quarters he occupied to transact company business. In these circumstances, the Court held that the company did not have a regular and established business in New York so as to come within the meaning of section 1400 (b)'s statutory predecessor. We are in agreement with the First Circuit's appraisal of the Tyler decision to the effect that solicitation of sales alone does not meet the statutory requirement. General Radio Co. v. Superior Electric Co., 293 F.2d 949 (1st Cir. 1961). The fact that Casco had its name listed on the building directory where Langenfeld had its office is not determinative when we are mindful that Casco paid none of Langenfeld's

expenses, had no employees in the latter's office, and exercised no control over its operation.

■■ Similarly, the fact that Casco's warranties against defective products were honored by its dealers and its authorized repair station does not mean that the company had a regular and established place of business in Chicago. This activity, although concerned with Casco's products, was conducted at places of business which were independently operated. For more obvious reasons, Casco's maintenance of a bank account in Chicago and the listing of its name in the classified telephone directory do not by themselves signify that Casco had a regular and established place of business in the city.

■ We next consider Casco's participation in the Housewares Shows. Although the show itself may have been a semiannual event and thus "regular" in that sense, Casco's participation in it constituted a temporary presence in Chicago rather than a regular and established place where one could transact business with the defendant from day to day and from month to month. Moreover, as the court pointed out in B. Heller & Co. v. First Spice Mfg. Corp., 172 F. Supp. 46 (D.C.Ill.1959), where a similar question was presented, "the [trade] organizations need not have an annual trade show, they need not hold it within this district, they need not rent space to defendants. * * * since these factors are removed from defendants' control, it cannot be said that defendants have a 'regular and established' place of business within this district." Similarly, Casco did not have that degree of control over the Housewares Shows for it to have there an established place of business, that is, one of a permanent or settled character.

■ Finally, we consider plaintiff's argument that the phrase "regular and established place of business" means a

business presence in the district of suit, characterized by systematic business activities of which a substantial portion is carried on at a permanent establishment located in the district. We find no fault with this statement in the abstract. We do not, however, adopt plaintiff's application of it to the facts of this case. Nor do we agree with its argument that the totality of Casco's activities in Chicago shows that it was "not 'a gypsy in our midst' but rather has a regular and established place of business" in the district. On the contrary, the very diffusion of its various activities in Chicago is the antithesis of a "regular" and "established" place of business.

*Langenfeld's motion to dismiss.*

The district judge found that only two sales of the accused irons had been made by Langenfeld and that the prospect of future sales was unlikely since Langenfeld no longer represented Casco. He concluded the matter was *de minimis* and dismissed the complaint.

 Plaintiff challenges the district court's ruling initially on the ground that there existed genuine issues of material fact so as to preclude a summary judgment. We do not agree with plaintiff's position. The district judge considered the motion to dismiss on the basis of the pleadings and certain documents which included the affidavits and deposition of Langenfeld's vice president. The undisputed facts disclosed by these papers show that Langenfeld's activity was confined to solicitation of orders except for the sale of two irons to its employees; that it displayed Casco irons but never demonstrated them; that it had no knowledge that Casco might be infringing plaintiff's patent and had no intent to induce infringement of the patent; and finally, that it terminated its relationship with Casco at the end of November, 1963. The complaint, which was filed November 4, 1963, charged Langenfeld infringed the patent by selling and inducing others to sell the accused irons. Plaintiff asked for damages and injunc-

tive relief. Upon a consideration of the complaint made and the relief sought in the light of the foregoing facts, we conclude that the district court was correct in treating the case as proper for summary disposition.

 We now address ourselves to the issues of law as to whether Langenfeld violated the statutory prohibitions against selling and using infringing devices and against inducing others to infringe.[2] We hold first that Langenfeld's solicitation activities did not amount to "selling" the accused irons. In W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U.S. 723, 35 S.Ct. 458, 59 L.Ed. 808 (1915), the Court was confronted with a similar factual situation as has been set out earlier in this opinion. Noting that the sale followed the solicitation and was consummated by the principal in another state, the Court held that the sale did not constitute a patent infringement in New York where the suit had been brought. Consistent with the Supreme Court holding, this court said in Minnesota Mining & Mfg. Co. v. International Plastic Corp., 159 F.2d 554 (7th Cir. 1947): "Where a dealer solicits an order for goods in one State and forwards it to a manufacturer at its home office in another State and the goods are shipped direct by the manufacturer, the sale is considered as having been made in the latter State and does not constitute an infringement of a patent in the former State."

 Moreover, even though plaintiff did not charge illegal "use," we hold that Langenfeld was not guilty of "using" the infringing appliances. Although it displayed the accused irons in its office and presented them to potential customers, the record shows that the irons were not operated for demonstration purposes. These acts were not illegal "uses" of the devices. Marlatt v. Mergenthaler Linotype Co., 70 F.Supp. 426 (D.C.Cal.1947).

 Finally, because Langenfeld, prior to the suit, lacked knowledge of the alleged infringement by Casco, its solici-

---

2. 35 U.S.C. § 271(a) and (b).

tation of orders cannot be said to have been active "inducement" of infringement in violation of the patent laws. Fromberg, Inc. v. Thornhill, 315 F.2d 407 (5th Cir. 1963). Concerning solicitation activity by Langenfeld subsequent to the filing of the suit as constituting active inducement to infringe, we are of the opinion that this activity, if any, should be treated in the same manner as the two sales were treated by the district court, that is, *de minimis*. Moreover, plaintiff is precluded from urging violations alleged to have occurred after filing of this complaint as evidence of charges contained therein. "[A] cause of action is to be tested as of the time of the filing of the complaint * * * and if no act of infringement occurred prior to the filing of the complaint, it is fatally defective * * * and cannot be cured by infringement occurring subsequent to the filing of the complaint * * *." Minnetota Mining & Mfg. Co. v. Plymouth Rubber Co., 178 F.Supp. 591, 596 (D.C. Ill.1959).

Because Langenfeld's relationship with Casco was terminated within one month after suit was commenced and its infringement was of such insignificance, we think defendant's conduct was properly viewed as *de minimis*. This rendered an award of damages or injunctive relief inappropriate and authorized the court to decline jurisdiction over the action.

It must be noted that the district court dismissed the complaint against Langenfeld "on its merits" after granting the motion to dismiss. Although the court was requested by a motion under Fed.R.Civ.P. 59(e) to alter or amend the order of dismissal by indicating the precise grounds therefor, it refused the request. We believe that the judgment of dismissal should have been granted on the specific ground of a refusal to exercise jurisdiction rather than "on its merits." For this reason we remand with direction to correct the order.

The orders of dismissal, after correction in accordance with the foregoing remand, are hereby affirmed.