**COLECO INDUSTRIES, INC., Plaintiff,**

v.

**KRANSCO MANUFACTURING, INC. and Saul Mondschein (d. b. a. Mondschein & Co.), Defendants.**

United States District Court
S. D. New York.

June 10, 1965.

Kenneth Pearson, New York City, for plaintiff.

Keith, Johnston, Isner & Des Marais, New York City, Guy W. Shoup, New York City, of counsel, for defendants.

TENNEY, District Judge.

Defendant moves herein, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss the complaint for improper venue under Section 1400(b) of Title 28 of the United States Code or, in the alternative, to transfer the action to the district where venue is more properly laid.

 It is not disputed that defendant is a California corporation and is not a resident of this district; accordingly, venue can be laid in this district only if it be shown that an act of infringement was committed here, and that defendant has a regular and established place of business in this district.

Both parties are engaged in the manufacture of various toy items for the beach and pool, including boats and small kiddie pools, and the causes of action are for infringement of a design patent of a pool and for unfair competition related thereto.

Assuming for the purposes of this motion that acts of infringement have occurred in this district (see Watsco, Inc. v. Henry Valve Co., 232 F.Supp. 38, 44–46 (S.D.N.Y.1964),[1] has it been shown that defendant has a regular and established place of business in this district? I think not, and the motion to transfer will accordingly be granted.

 It is, of course, plaintiff's burden to show this essential element in order to maintain the action in this district. Gwynne v. Michael Flynn Mfg. Co., 227 F.Supp. 357 (S.D.N.Y.1964).

 Venue in patent infringement actions is governed exclusively by Section 1400(b) of Title 28 (Fourco Glass Co. v. Transmirra Prod. Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957)), and

while certain activities may constitute "doing business" under the general venue statutes (28 U.S.C. § 1391(c)), the "doing business" test is not to be substituted for the "regular and established place of business" test in Section 1400(b), and the terms are not to be treated synonymously. Knapp-Monarch Co. v. Casco Prod. Corp., supra, 342 F.2d at 624.

Depositions were taken of Saul Mondschein, defendant's sales representative (this deposition will hereinafter be referred to as "M" with the appropriate page citation), John N. Rosenkrans, Jr., President of defendant corporation (this deposition will hereinafter be referred to as "R" with the appropriate page citation), and Robert J. Wilson, salesmanager of defendant corporation (this deposition will be referred to as "W" with the appropriate page citation).

From these depositions, the following appears:

Defendant is a California corporation (R–3) with its principal place of business in that state, and is not authorized to do business in New York State (R–5). Its manufacturing plants are located in San Francisco and Los Angeles, California (R–4). In addition, the defendant stocks no products in New York (R–6), and does not maintain a bank account in this state (Rosenkrans affidavit at 2).

Saul Mondschein, the person served, is a commission salesman for defendant. He is not a salaried employee of defendant, his remuneration depending solely on commissions from sales solicited by him and accepted by defendant in California for shipment (M–5; R–10).

Mr. Mondschein maintains his own office in New York, located at 200 Fifth Avenue (M–5), and has had that office for ten years (M–5), though he has only represented defendant for three (M–5). He pays all the expenses for that office and receives no reimbursement for rent or telephone expenses (W–24). He exhibits defendant's products in his showroom but is not reimbursed for that

---

1. But see Knapp-Monarch Co. v. Casco Prod. Corp., 342 F.2d 622 (7th Cir. March 23, 1965), cert. denied, 86 S.Ct. 64 (10/12/65).

space (M–5) and, in fact, is not required by defendant to maintain said display (M–6; W–23), nor is any particular portion of the showroom reserved for that purpose (M–20). The display of these products, however, is not unique since Mondschein displays the products of other companies he represents as well, according to the needs of the particular merchandise of the particular company (M–17). In addition to defendant, Mondschein represents some eight other manufacturers (M–18). Mondschein lists Kransco in the telephone directory at his own expense (M–6) without any prearrangement with the defendant (M–19) and without the knowledge of Kransco's sales manager (W–23), and in a manner similar to that used with respect to all the companies he represents (M–19). Similarly, Mondschein lists Kransco's name on the lobby directory at 200 Fifth Avenue at his own expense, though not on his own door (M–6), all without the knowledge of Kransco's sales manager (W–23) or president (R–11).

No officers or employees of defendant make use of Mondschein's showroom facilities and if use is made of Mondschein's telephone facilities it is after permission is given, and, in addition, payment is made for all calls made (M–17; W–25). Similarly, no desk or table facilities are reserved for any of defendant's representatives (M–17; W–25).

The defendant presented an exhibit at the New York Toy Fair in 1962, but has not done so since (W–4, 10, 11, 12).[2]

Insofar as orders are concerned, Mondschein, as already noted, works purely on a commission basis. He has some catalogues and price lists on hand in the showroom. However, his name does not appear thereon and on the price list there appears the notation "Home Office and Factory: 464 Victory Ave. South, San Francisco, California" and "Sales Office and Factory: 14241 Ventura Blvd., Sherman Oaks, California." (Plaintiff's Exhibit 2 for identification.)

All orders were taken on Mondschein's own order forms which contain a space for insertion of the name of the customer and the name of the manufacturer (M–19), and these same order forms are used in connection with sales by the other eight companies that Mondschein represents (M–22).

While Mondschein gave certain discounts in the event he thought it necessary on the advice and authorization of defendant (M–14), all orders filled in by him were sent to California for checking, confirmation and approval to ship merchandise (M–19). The procedure as described by Rosenkrans is that orders obtained by sales representatives such as Mondschein are forwarded to the San Francisco office and factory for acceptance and credit check, and then are shipped by the most economical means of transportation (R–7). Kransco invoices all customers directly and all products are shipped by Kransco directly to the buyer.[*] Check is made of the credit standing of the company and whether the prices contained in the order are correct (R–12), and on occasion orders sent by Mondschein have been rejected (R–12) (compare W–24). At the time shipment is made bills are sent to the accounts involved and the matter of delinquent accounts is handled by defendant's credit manager (R–11). However, Mondschein's aid has never been enlisted to collect any such accounts (R–12).

There is no written agreement between Mondschein and defendant (R–12; W–21), the only agreement being an oral one wherein Wilson simply asked Mondschein to represent products manufactured by Kransco and requested him to solicit and procure sales in an assigned area, to wit, Pennsylvania, New Jersey,

---

2. There is some question as to whether this factor, even if it were significant, which it does not appear to be (see Knapp-Monarch Co. v. Casco Prod. Corp., supra, 342 F.2d at 625, should be considered in determination of the issue raised on this motion since it occurred prior to the institution of the instant action. Brevel Prod. Corp. v. H & B American Corp., 202 F.Supp. 824, 827 n. 1 (S.D. N.Y.1962).

* (Rosenkrans affidavit at 2.)

Vermont, Washington, D. C., and New York (W–22), in return for a commission on sales accepted. He is not, however, required to make any quota of sales per year (W–23).

In essence, then, Mondschein has an agreement similar to that of all of defendant's other representatives, some fourteen, located throughout the country (W–25, 26) and is supplied with the same free samples and catalogues as all of defendant's representatives (W–22).

Defendant's sales manager Wilson visits New York on two to three occasions per year (W–4) as he does the respective territories of all of defendant's sales representatives (W–7).

While in New York, Wilson on occasion calls on buyers of various chain stores.

It appears that in situations wherein a chain store has a regional buyer, which is the case with respect to most chain stores (W–29), sales are usually initiated from their California offices and followed up in New York (W–27). In the normal course, the sale is initiated in California with a specific account which may then request one of defendant's representatives to call on the New York buying office (W–5). In these cases, while at times the authorization for sale may be given in the New York buying office, the actual purchase orders are issued in California. A few chain stores do not have regional buyers (four or five, see W–20), and as to them inquiry must be made in the New York office. However, in these cases, as well, it is rare that orders are issued out of New York (W–29).

When Wilson has on occasion (W–5) called on the New York offices of some of the chain stores, it was to present the new line of products or the products that defendant was offering for sale. On these occasions Wilson would bring with him a catalogue and price list (W–5) and some of his own samples, or, if he had none, he would borrow one of Mondschein's (W–9).

On these occasions, if an order was written up, subject to transmission to California, there appears to have been no set procedure with respect to who would write the order up (W–7, 8, 9, 27, 29, and see discussion above), where it was written (ibid.), and who was credited with the sale (ibid.). But in any event Wilson testified that the sales out of the Southern District of New York since 1962 were not only "not substantial" (W–13) but were "practically nil" (W–13). He also testified that, to his knowledge, none of the infringing items were shipped into this District (W–21).

The essence of plaintiff's position, supported by an affidavit of one of its officers and of a manufacturer's representative, is that New York is the toy center of the country and that no toy manufacturer can succeed without a regular and established permanent base of operations in New York. Accordingly, plaintiff argues that *ipso facto* defendant must have such a place of business in this District. To accept this hypothesis, however, would subject all "successful" toy manufacturers to suit in this District—a conclusion which is clearly unacceptable.

The defendant in a patent infringement suit must not only be doing business, but must be "regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control." Mastantuono v. Jacobsen Mfg. Co., 184 F.Supp. 178 (S.D.N.Y.1960); accord, Brevel Prod. Corp. v. H & B American Corp., 202 F.Supp. 824, 827 (S.D.N.Y.1962).

While each case must stand or fall on its own particular facts, I think a brief summary of some of the cases cited by plaintiff and of the more recent decisions will demonstrate the insignificant nexus between defendant and this District under the facts presented herein.

Thus, for example, in Stiegele v. Jacques Kreisler Mfg. Corp., 213 F.Supp. 494 (S.D.N.Y.1962), there was a showing that the defendant, a New Jersey corporation, had an office in this District for over twenty years, for which it was paying rent. Moreover, the salary of the

lone employee in the office was paid by the corporation and the corporation itself listed its name in the telephone directory with its New York address.

Similarly, in Gwynne v. Michael Flynn Mfg. Co., 227 F.Supp. 357 (S.D.N.Y. 1964), the Court found that the defendant corporation actually maintained an office in this District for "certain purposes" and that this office was staffed, by the defendant presumably, with two women answering telephones and doing other clerical work.

A mere examination of the facts set forth in Watsco, Inc. v. Henry Valve Co., 232 F.Supp. 38, 41–42 (S.D.N.Y. 1964) serves to distinguish it from the case at bar as well. For in the Watsco case the defendant, *inter alia*, was the lessee of the New York office and made rental payments for it from its home office. In addition, the personnel staffing the office were salaried personnel and the corporation listed its name in the telephone directory and on the door.

To be compared with these cases is the case of Clearasite Headwear, Inc. v. Paramount Mfg. Co., 204 F.Supp. 4 (S.D.N.Y. 1962) wherein the defendant corporation was a Missouri corporation with its office and principal place of business in that state. It did not maintain a bank account in this state, nor was it authorized to do business here. Furthermore, it did not ship merchandise into this city. The only connections were the activities of a commission salesman who represented the defendant corporation as well as others. He was not salaried but did receive limited traveling expenses from the defendant. He also, at his own expense, listed the name of the defendant in the telephone directory and on his office door. All orders solicited by him were forwarded to Missouri for acceptance and consummation, and payment was made directly to Missouri. On this factual picture the Court agreed that venue was improperly laid in this District.

It must be borne in mind that we are here dealing with a sales representative, not a salaried employee, who works solely on a commission basis and is not reimbursed for any expenses. As was pointed out by Judge Dawson in Brevel Prod. Corp. v. H & B American Corp., 202 F. Supp. 824, 827–828 (S.D.N.Y.1962):

"An essential prerequisite for a finding of venue in cases of this sort is that the defendant actually maintains, in the words of the statute, 'a regular and established place of business' within the district. This 'place of business' can be a branch office (Patent Royalties Corp. v. Land O'Lakes Creameries, sales showroom (Shelton v. 11 F.Supp. 103 (E.D.N.Y.1935)), a sales-showroom (Shelton v. Schwartz, 131 F.2d 805 (7th Cir. 1942)), or a warehouse or distribution center (Federal Electric Products Co. v. Frank Adams Electric Co., 100 F.Supp. 8 (S.D.N.Y.1951)). But it must be maintained and paid for by the defendant. The mere fact that defendant hires a sales representative who in turn rents offices to sell defendant's products is insufficient. Kay v. J. F. D. Mfg. Co., 261 F.2d 95 (5th Cir. 1958); Root v. Samuel Cupples Envelope Co., 36 F.2d 405 (2d Cir. 1929); McGah v. V–M Corp., 166 F.Supp. 662 (N.D. Ill.1958); Kamkap, Inc. v. Worldsbest Industries, Inc., 140 F.Supp. 854 (S.D.N.Y.1956).

As the court pointed out in Shelton v. Schwartz, 131 F.2d 805 (7th Cir. 1942), at page 809: 'Emphasis must be on the existence of the regular and established place of business—not on the nature or character of the business conducted there.' In the many cases examined by the Court only one has held that venue was proper in a district where defendant had no place of business. Sherman Paper Products Corp. v. Sorg Paper Co., 161 F.Supp. 44 (E.D.Mich.1958). In that case an Ohio corporation had hired a sales representative in Michigan, who was paid on a commission basis. The representative had authority only to

solicit sales, not consummate them, but apparently some small sales were made in Michigan by the representative out of a small stock kept in Michigan. Defendant was listed in the Michigan telephone directory. However, the factor that influenced the court most strongly seemed to be the fact that defendant had registered to do business in Michigan and in fact had yearly sales of $380,000 in Michigan. This case reaches the broadest limit of judicial interpretation of § 1400(b); it is distinguished from the instant case in that goods were stored in Michigan and sales made from these stocks."

In fact, in the Brevel case just cited there was even more of a nexus with the District than in the case at bar. For in Brevel it appeared that the defendant corporation maintained a New York telephone listing and its name appeared on the door of its sales representative in New York. Its products were displayed in these offices and it listed these offices in its catalogues as "New York Sales and Showroom". Moreover, its sales representative, in addition to advertising the product, also processed some complaints on behalf of the corporation and collected certain accounts for the corporation. Nonetheless, the Court, finding that these activities merely were incidents of "sales solicitation" and that the corporation, but for the activities of this commission salesman, had no salaried employees in the District, found venue improperly laid.

Nor did the occasional activities of defendant's sales manager Wilson in the present case constitute such a presence in this District, activities even more insubstantial than Mondschein's. Cf., General Radio Co. v. Superior Elec. Co., 293 F.2d 949 (1st Cir. 1961).

A view similar to that expressed in Brevel, supra, is expressed in General Radio Co. v. Superior Elec. Co., supra, where the activities therein set forth more directly involved the defendant corporation than in the instant case, activities such as the actual maintenance in the

District of an office, staffed with a sales manager and secretary and the listing by the corporation of its name in the telephone directory and on the door of its office. In addition, complaints were serviced in the District as well. In spite of these factors, venue was found to be improper.

In W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U.S. 723, 35 S.Ct. 458, 59 L.Ed. 808 (1915) a Missouri corporation employed a sales representative in New York City. He solicited orders which were completed at the home office. The company paid him a salary and traveling expenses. In addition, it also paid rent on the quarters he occupied to transact company business. The Court held that these activities did not constitute a regular and established place of business within the meaning of the patent venue statute.

Any doubt as to the lack of sufficient contacts with the District in the case at bar are dispelled by the recent Seventh Circuit decision in Knapp-Monarch Co. v. Casco Products Corp., 342 F.2d 622 (7th Cir. March 23, 1965).

In that case, the defendant was a Connecticut corporation with its principal place of business in Bridgeport, Connecticut, and its only factory located there as well. It had no employees nor office located in Chicago though it did maintain a bank account in that state.

In addition, the Master Electric Service Company, a service company in Chicago, listed itself in the telephone directory as the "Casco Authorized Service" and was authorized by the defendant corporation to make repairs on appliances under the terms of a warranty which accompanied each Casco product. Under a policy instituted by the defendant prior to the institution of suit, the retailer or wholesaler who sold a defective Casco product was authorized by Casco to honor its warranty by taking back the defective product and replacing it at no charge, the retailer being reimbursed by Casco.

The record further reveals that Casco had rented space in a trade show held semi-annually in Chicago and during

these shows rented a "hospitality suite" for entertaining prospective customers and holding general sales meetings.

Defendant also had a sales representative in that area. There existed a written agreement between the two companies describing the individual representative as an "independent businessman". The representative had his own office, paying his own rent and expenses without reimbursement from Casco. Casco's name was listed in the telephone directory and on the office directory, but not on the office door itself. Orders were sent to Connecticut where they were filled, and shipments made directly to customers with payment directly to Casco. The representative carried samples of the products on display in his office and made gifts or an accommodation sale of some of those items to its employees. Though requested by the defendant to do so, the representative did not call on delinquent accounts.

On this showing, the Court held that Casco did not have a regular and established place of business in Chicago. While the Court's reasoning need not be set forth herein, it fully demonstrates the complete disassociation of "doing business" within the meaning of the general venue statute and a "regular and established place of business" in the patent venue statute.

In view of the authorities cited above and the reasons for the enactment of a special venue statute in patent cases (see Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942); Schnell v. Peter Edkrich & Sons, Inc., 365 U.S. 260, 262, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961)), I find venue not properly laid in this District.

The Court, however, will not dismiss the action[3] for improper venue. Under Section 1406(a) of Title 28, the Court "in the interests of justice" can transfer an action from the wrong District to a "district * * * in which it could have been brought." Accordingly, the alternate relief requested by defendant will be granted, and the action transferred to the United States District Court for the Northern District of California, Southern Division, where defendant resides.

In view of the Court's decision herein, I think it more appropriate to have the Court wherein the action will now continue rule on the issue of amending the complaint. However, I might note parenthetically on the issue of venue that the causes of action sought to be added to the complaint deal with a contract made in California between a predecessor corporation, whose assets plaintiff acquired (a California corporation) and defendant corporation (also a California corporation). Moreover, the president of this predecessor corporation whose testimony is obviously an invaluable element of plaintiff's case, is a resident of California as well.

For all the reasons hereinbefore set forth, defendant's motion to dismiss is denied, and the action is transferred to the District Court wherein defendant resides.

Plaintiff's motion to amend its complaint is denied without prejudice to renewal thereof before that Court.

Settle order on notice on one (1) day's notice in conformity herewith.

---

3. In view of the Court's decision to transfer the within action, a determination need not be made as to defendant's contention that service upon it was not perfected by serving Mondschein. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); E. H. Sheldon & Co. v. Norbute Corp., 228 F.Supp. 245 (E.D. Pa.1964); FitzSimmons v. Jones Towing Inc., 238 F.Supp. 92 (N.D.Ala.1965).