**JEFFREY GALION, INC., Plaintiff,**

v.

**JOY MANUFACTURING COMPANY, Defendant.**

**Civ. A. No. 68–10–C.**

United States District Court,
N. D. West Virginia.

Jan. 28, 1971.

John D. Phillips, Phillips & Holden, Wheeling, W. Va., for plaintiff.

Russell L. Furbee, Furbee, Amos, Webb & Critchfield, Fairmont, W. Va., Rose, Schmidt & Dixon, E. W. Breisch, Pittsburgh, Pa., for defendant.

MEMORANDUM OPINION

MAXWELL, Chief Judge.

Plaintiff, Jeffrey Galion, Inc., an Ohio corporation, complains that defendant, Joy Manufacturing Company, a

Pennsylvania corporation, has infringed plaintiff's patent on a coal mining machine sold to and used by Consolidation Coal Company at one of its coal mines located within the Northern Judicial District of West Virginia.

Defendant has moved to dismiss plaintiff's complaint because of improper venue or to transfer the action to the United States District Court in the Western District of Pennsylvania, or, in the further alternative, to transfer the action to the Fairmont point of holding Court in the Northern District of West Virginia.

Joy Manufacturing Company, as plaintiff, has commenced a patent infringement action in the United States District Court for the Western District of Pennsylvania, against Jeffrey Galion, Inc., defendant, Civil Action No. 69–1115, to have defendant's mining machine patent declared invalid. By order entered on November 5, 1969, in the United States District Court for the Western District of Pennsylvania, proceedings in said Civil Action No. 69–1115 were stayed pending decision in this action in the Northern District of West Virginia.

The record before the Court is complete with stipulations, depositions, interrogatories and affidavits. This action is matured for the Court's consideration of the defendant's motion to dismiss or to transfer.

Three principal propositions are advanced by defendant as bases for its motion to dismiss or transfer:

(1) Defendant did not commit any acts of patent infringement in the Northern District of West Virginia, as in the complaint charged.

(2) Defendant has no regular and established place of business in the Northern District of West Virginia.

(3) For convenience of parties and witnesses, the action should be transferred to the United States District Court for the Western District of Pennsylvania wherein initially it might have been brought.

Three statutes are of immediate interest.

Venue for patent infringement actions is defined in 28 U.S.C.A. Section 1400(b) in this language:

(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

Change in venue for the convenience of parties and witnesses is authorized by language in 28 U.S.C.A. Section 1404(a):

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Action by the Court to dismiss or transfer a case laying venue in the wrong district is directed in 28 U.S.C.A. Section 1406(a):

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Briefs of counsel and independent research suggest that this is one of few patent infringement cases where, at this relatively early stage of the litigation, the Court must descend to the depth of the issue as to defendant's "regular and established place of business."

 Plaintiff, in its brief, recognizes that defendant, a Pennsylvania corporation, is not a resident of the Northern District of West Virginia, thereby removing from further consideration here the first clause of the venue statute, Section 1400(b), above quoted. The second conjunctive clause of the statute requires a showing that defendant has committed acts of infringement in the District and has a regular and established place of business in the Dis-

trict. "The burden of proof is upon the plaintiffs to show proper venue." Scaramucci v. FMC Corporation, 258 F.Supp. 598 (D.C.W.D.Okl.1966). This requires plaintiff to establish both statute requisites. The patent infringement statute is exclusive, unaided by other venue statutes. Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); American Cyanamid Co. v. Nopco Chemical Co., 388 F.2d 818 (4th Cir. 1968).

The venue requirement that defendant has committed acts of patent infringement in the District has been a controversial subject in the depositions, interrogatories and briefs. The patent statute provides that "whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent" and further provides that "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C.A. Section 271.

The record now before the Court does not satisfy plaintiff's burden of proof that defendant has committed acts of patent infringement in the District. See Clearasite Headwear, Inc. v. Paramount Cap Manufacturing Co., 204 F. Supp. 4 (D.C.S.D.N.Y.1962).

The more critical issue, however, is whether defendant "has a regular and established place of business" in the Northern District of West Virginia. This language in the patent venue statute may not be expanded by other venue statutes and doctrines. The concept of "doing business" and the reach of the "long-arm" statutes are not here involved. Knapp-Monarch Co. v. Casco Products Corp., 342 F.2d 622 (7th Cir. 1965). See Annotation, 20 A.L.R.3d 1957 (1968). Good reasons exist for making the patent venue statute explicit. Ruth v. Eagle-Picher Co., 225 F.2d 572 (10th Cir. 1955).

Plaintiff states in the complaint that defendant has "a regular and established place of business at Minor Avenue, Fairmont, Marion County, West Virginia." Defendants interrogatories to plaintiff made inquiry as to the factual basis for the complaint statement. Excerpts from plaintiff's answers to the interrogatories follow:

*Interrogatory No. 3:1.* "Specifically enumerate the factual basis for the allegation in the Complaint that defendant has a regular and established place of business at Minor Avenue, Fairmont, Marion County, West Virginia."

ANSWER: Defendant is the owner of and for some time past has owned property on Minor Avenue in Fairmont, Marion County, West Virginia, on which a building is located in which defendant has an office, warehouse and repair shop and regularly carries on business, including the sale and repairing of mining equipment. Defendant has owned this property since 1941. Defendant is listed in the Fairmont telephone directory and in the yellow pages thereof under the heading "Mining Equipment and Supplies." On information and belief, defendant now has, and for many years has had, several regular employees at that location.

*Interrogatory No. 3:2.* "State whether plaintiff claims any act of infringement alleged took place at the location set forth in Part 3:1."

ANSWER: As presently advised, plaintiff does not know whether any acts of infringement have taken place at defendant's place of business on Minor Avenue in Fairmont, West Virginia.

*Interrogatory No. 3:3.* "If the answer to Interrogatory 3:2 is in the affirmative, state the date of each act set forth in reply and state the precise nature of the alleged act, including the identity of each person who may have knowledge or information with respect to each act set forth."

ANSWER: No answer required.

*Interrogatory No. 3:4.* "Describe in detail the business allegedly conducted by defendant at the location set forth in Part 3:1."

ANSWER: Plaintiff does not know in detail the business conducted by defendant at Minor Avenue in Fairmont,

West Virginia, but believes that defendant conducts a warehousing operation, the repairing of mining equipment and possibly sales of mining equipment and supplies at the Minor Avenue location.

*Interrogatory No. 3:5.* "State whether Jeffrey claims that defendant carries on a substantial part of defendant's ordinary business at the location set forth in Part 3:1."

ANSWER: Plaintiff does not know exactly what defendant means when it refers to a "substantial part of defendant's ordinary business," but plaintiff does claim that the business carried on by defendant at the Minor Avenue location is substantial.

*Interrogatory No. 3:6.* "If the answer to Interrogatory 3:5 is in the affirmative, state in detail the factual basis for the answer."

ANSWER: Defendant would not have maintained ownership of property and a building in which business is conducted and would not have maintained employees at that location for so many years unless the business conducted at said location was of a substantial nature.

These answers of plaintiff to defendant's interrogatories were signed and verified by Richard T. Hair, vice president of Jeffrey Mining Machinery Co., a division of Jeffrey Galion, Inc. Mr. Hair was also deposed by defendant but his deposition does not relate to defendant's place of business in Fairmont, West Virginia.

Defendant responded to plaintiff's interrogatories making inquiry concerning defendant's places of business in the Northern District of West Virginia. Excerpts from the interrogatories and responses follow.

*Interrogatory No. 51.* "Identify by address and description each and every office, showroom, warehouse, manufacturing or assembling plant, or other place of business operated by or for defendant in the jurisdictional area of the District Court for the Northern District of West Virginia."

ANSWER: The defendant has no office, showroom, warehouse, manufacturing or assemblying plants in the jurisdictional area of the District Court for the Northern District of West Virginia. The defendant does have a repair and rebuild shop located at Minor Avenue and Tenth Street, P. O. Box 1046, Fairmont, West Virginia, within such jurisdiction. The nature of the business conducted at such repair and rebuild shop is the repair and rebuilding of commercial items by the defendant such as hydraulic jacks; pumps; valves; control panels; switches; and transmissions.

*Interrogatory No. 52.* "State the number of employees at each and every place of business identified in the answer to Interrogatory No. 51."

ANSWER: None, except for eleven employees at the repair and rebuild shop.

*Interrogatory No. 53.* "Identify the employee in charge of each and every place of business identified in the answer to Interrogatory No. 51."

ANSWER: The manager in charge of the "Repair and Rebuild Shop" at Fairmont, West Virginia, is G. B. Morgan.

*Interrogatory No. 54.* "State the nature of the business conducted at each and every place of business identified in the answer to Interrogatory No. 51."

ANSWER: None, except at Fairmont, West Virginia, where primarily the repair and rebuilding of commercial items by the defendant such as hydraulic jacks; pumps; valves; control panels; switches; and transmissions is undertaken.

*Interrogatory No. 55.* "State the type of products sold, manufactured, shipped or serviced from each and every place of business identified in the answer to Interrogatory No. 51."

ANSWER: Generally, no types of products are sold, manufactured or shipped in the judicial district for the Northern District of West Virginia.

Primarily the "Repair and Rebuild Shop" only services those items identi-

fied in the answer to Interrogatory No. 55.

*Interrogatory No. 56.* "Does the defendant own property on Minor Avenue in Fairmont, Marion County, West Virginia, on which a building is located, and if so, how long has defendant owned that real estate?"

ANSWER: Yes, defendant owns such property. The Property was first acquired in about 1941 from Monongahela Power and in 1959, one half of such property was resold to Monongahela Power. The defendant's total holdings of property at such location measures approximately 139′ x 30′.

*Interrogatory No. 57.* "What type of business activities does defendant conduct at the location referred to in Interrogatory No. 56?"

ANSWER: Reference is made to the answers of Interrogatory No.'s 54 and 55.

*Interrogatory No. 58.* "Does the building referred to in Interrogatory No. 56 contain a sales office of the defendant?"

ANSWER: No.

*Interrogatory No. 59.* "Does the building referred to in Interrogatory No. 56 contain a warehouse operated by the defendant?"

ANSWER: No.

*Interrogatory No. 60.* "Does the building referred to in Interrogatory No. 56 contain a repair shop operated by the defendant?"

ANSWER: Yes.

*Interrogatory No. 61.* "If the answer to Interrogatory No. 58 is in the affirmative, do salesmen operating out of the building identified in Interrogatory No. 56 solicit orders for mining equipment; if so, are such orders accepted at this office?"

ANSWER: No. No orders for mining equipment are solicited or accepted at the Fairmont, West Virginia shop.

*Interrogatory No. 62.* "Is mining equipment shipped, repaired or serviced from the building identified in Interrogatory No. 56?"

ANSWER: As presently advised, mining equipment is not shipped from such building.

Components of mining equipment are repaired and serviced to the extent set forth in answer to Interrogatory No. 54 but mining equipment as such is not repaired or serviced from such building.

These answers of defendant to plaintiff's interrogatories were signed and verified by James P. Packer, secretary of Joy Manufacturing Company.

Plaintiff urges in opposition to defendant's motion to dismiss or transfer that defendant has a "regular and established place of business" in the Northern District of West Virginia. Brevel Products Corp. v. H & B American Corp., 202 F.Supp. 824 (D.C.S.D.N.Y. 1962), is cited for the proposition that a regular and established place of business, as contemplated in the patent venue statute, may be a branch office, a sales-showroom, or a warehouse or distribution center. Defendant's sworn answers to interrogatories disclose that defendant has only one operation of a business nature in the District, described as a "Repair and Rebuild Shop," on a plot of ground approximately 139 feet by 30 feet, on Minor Avenue, in the City of Fairmont, but has no warehouse or sales room there and does not solicit or accept orders for mining equipment thereat.

The history of the patent venue statute is significant. In Ruth v. Eagle-Picher Co., 225 F.2d 572, at 577 (10th Cir. 1955), is the following summary:

The patent venue statute, as construed in Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026, reflected a sound policy of long standing. It was based on considerations of practicality and convenience in such litigation. A patent infringement action involves a peculiar combination of science or technology and law. In the ascertainment of the pertinent techni-

cal facts, it is important that the trial judge have first-hand visual and audible knowledge of the conditions, the environment and the art itself and the testimony of the most competent witnesses. Practicality and convenience are best served when the case is prosecuted where the alleged acts of infringement occurred and the defendant has a regular and established place of business.

Scaramucci v. FMC Corporation, 258 F.Supp. 598 (D.C.W.D.Okl.1966), illustrates the application and intent of the statute. That case involved a valve patent infringement. The Court found that the defendant had committed an act of infringement in the District, and turned then to consider the "regular and established place of business" requirement. Defendant was selling the accused valve in the District, was licensed to do business in the state, and had a service agent therein. Also defendant had a division of its corporation in the District which manufactured and sold equipment different from the accused valve. That division was recognized to be a "regular and established place of business." The Court made the following analysis and findings:

> However, with reference to the other requirement that the defendant has "a regular and established place of business" in this judicial district, the Court finds and concludes that the defendant does not have a regular and established place of business in this judicial district within the intent, purpose and meaning of 28 U.S.C. § 1400(b). The facts of having a service agent and being licensed to do business in Oklahoma are not controlling and will not satisfy the requirement. E. H. Sheldon & Company v. Norbute Corporation, 228 F.Supp. 245 (E.D.Pa.1964). Nor may the familiar test of "doing business" be substituted for the test of a "regular and established place of business." Knapp-Monarch Co. v. Casco Products Corp. et al., 342 F.2d 622 (Seventh Cir.

1965), cert. denied 382 U.S. 828, 86 S.Ct. 64, 15 L.Ed.2d 73.

The activities of the sales representative of defendant as outlined above fall far short of constituting or creating a "regular and established place of business" in this judicial district of the defendant within the meaning, purpose and intent of said statute. General Radio Co. v. Superior Electric Co., 293 F.2d 949 (First Cir. 1961); Knapp-Monarch Co. v. Casco Products Corp., supra; Clearasite Headwear, Inc. v. Paramount Cap Mfg. Co., 204 F.Supp. 4 (S.D.N.Y. 1962); Brevel Products Corp. v. H & B American Corporation, 202 F.Supp. 824 (S.D.N.Y.1962); McGah v. V-M Corporation, 166 F.Supp. 662 (N.D. Ill.1958). As to the OCT Division and its office in this judicial district the question is more difficult. At first blush this would seem to satisfy the venue statute. But this is a special patent venue statute and an consideration of the history of patent venue, this statute, its predecessor statute and the apparent purpose and intent of the present statute, leads the Court to the conclusion that this requirement is lacking in this case notwithstanding the defendant has another Division with a regular and established place of business in this judicial district. The former patent value statute allowed suit wherever the offender could be served. The present statute was intended to narrow or restrict this venue.

In considering the present venue statute, the United States Supreme Court in Schnell v. Peter Eckrich & Sons, Inc., 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961), refused to give the same a liberal construction with this language:

> "The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction."

■ The Court finds and concludes that defendant's place of business at Fairmont, West Virginia, is not a "regular and established place of business," as contemplated and required in the patent venue statute, and that plaintiff has failed to establish this requirement of venue.

■ This finding and conclusion will require the Court to dismiss the action, or, in the alternative, to transfer it to the Western District of Pennsylvania where a related action is now pending involving the same accused coal mining machine patent. See discussion in Annotation, 3 A.L.R.Fed. 467 (1970). The decision to transfer an action rests in the discretion of the Court. Akers v. Norfolk and Western Ry., 378 F.2d 78 (4th Cir. 1967); Bayly Manufacturing Co. v. Koracorp Industries, Inc., 298 F.Supp. 600 (D.C.D.Colo.1969). Pendency of a similar action in a proposed transferee district is a persuasive factor to be considered, but is not controlling. Thomson & McKinnon v. Minyard, 291 F.Supp. 573 (D.C.S.D.N.Y.1968). Again, the opinion in the *Scaramucci* case, *supra,* 258 F.Supp. 598, at 602, is pertinent:

> Accordingly, the defendant's Motion to Dismiss for lack of venue is well taken and this suit must be dismissed or, by the authority of 28 U.S.C. § 1406(a), be transferred to the United States District Court for the Southern District of Texas, Houston Division. Since this suit was instituted in this Court, the defendant has brought a declaratory judgment action covering the same subject matter in the United States District Court for the Southern District of Texas, Houston Division. It is believed that the interest of justice requires that this case be transferred to the United States District Court for the Southern District of Texas, Houston Division, where a consolidation may be effected and the matter heard and decided. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); E. H. Sheldon & Company v. Norbute Corporation, supra.

For a later case in support of the principle of transfer as the alternative to dimissal, where venue is improper, see Hydro-Clear Corporation v. Aer-o-Flo Corporation, 317 F.Supp. 1317, 1319 (N.D.Ohio, E.D.1970).

In accord with provisions of 28 U.S.C.A. Sections 1404(a) and 1406(a), this action will be transferred to the United States District Court for the Western District of Pennsylvania. Defendant's motion to dismiss will be denied and the further alternative motion to transfer the action to the Fairmont point of holding Court in this District is likewise denied.

■ Plaintiff filed an amendment to its complaint on March 23, 1970, and on April 13, 1970, defendant filed a motion to strike the amendment. Since this action is being transferred to another Court, it appears that this Court should refrain from acting on the motion to strike the amendment, allowing the transferee Court full opportunity to review the pleadings and exercise its discretion thereon. Accordingly, the motion to strike the amendment will be held in abeyance for such action as the transferee Court may find proper thereon.

An order will be prepared and entered making this Memorandum Opinion a part of the record in this action and effectuating the findings and rulings of the Court herein.